UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

G.L.M. SECURITY & SOUNDS INC.,

                Plaintiff,

           v.

LOJACK CORP.,

                Defendant.

-----------------------------------------------------------------x

**MEMORANDUM & ORDER**
10 CV 4701 (PKC) (ARL)

PAMELA K. CHEN, United States District Judge:

This action arises from a dispute over an agreement between defendant LoJack Corp. ("LoJack") and plaintiff GLM Security & Sound, Inc. ("GLM") to distribute and install car security systems. *See G.L.M Sec. & Sound, Inc. v. LoJack Corp.*, 10 CV 4701, 2014 WL 4675854. On September 19, 2014, the Court granted summary judgment in favor of LoJack on its breach of contract counterclaim against GLM based in part on (1) a finding that LoJack did not breach any purported "best price" promise, and (2) GLM's undisputed failure to pay for a substantial portion of the car security systems it received from LoJack.[1] *Id*. at *2, 27-28. Currently pending before the Court is LoJack's motion for damages on its breach of contract counterclaim. (Dkt. 73.)

The parties' present dispute centers on the amount of interest, if any, GLM must pay LoJack for GLM's delinquent payments. (*See* Dkts. 73, 75, 77.) GLM asserts that LoJack

---

[1] Having found that there was no "best price" oral modification to the Agreement, the Court dismissed all of GLM's claims against LoJack. *Id*. at *1-2, 12-23. The Court also denied summary judgment on LoJack's counterclaim for breach of good faith and fair dealing. *Id*. at *2, 24−25. LoJack subsequently waived its remaining counterclaims. (Dkt. 72 at 1.)

relinquished its ability to seek interest pursuant to the contract, since LoJack never expressly sought interest on late payments from GLM during their extended business relationship. (Dkt. 75 at 1, 6−7.) In any event, GLM contends that the amount of interest is diminished because the parties agreed, in written post-contract communications and through their course of conduct, to extend the time before payments became due (the "payment term" or "payment deadline"), beyond 60 days of invoice as provided in the contract. (*Id.* at 4−5, 7−8.)

For the reasons set forth below, LoJack's motion for damages is granted in part and denied in part. The Court finds that LoJack is entitled to recover damages on its breach of contract claim in the amount of $996,192.00 for GLM's outstanding balance,[2] plus interest at a rate of 1.5% per month on GLM's late payments accruing after 90 days of invoice. LoJack is directed to submit proposed formulas and calculations for a 90−day payment term within 14 days of this Order, and GLM is permitted 7 days thereafter to respond.

## *BACKGROUND*

The Court presumes the parties' familiarity with the facts underlying this action and only includes those facts that are necessary to resolve LoJack's request for damages.

LoJack is a corporation that manufactures, distributes, and sells car security systems in the auto industry. (LoJack 56.1 ¶ 7.) GLM is a corporation that sells car security systems wholesale to automobile dealerships. (*Id.* ¶ 2.)

On September 15, 2002, GLM and LoJack entered into the "LoJack Distributorship and Installation Agreement" (the "Agreement"), pursuant to which GLM agreed to purchase "Stolen

---

[2] LoJack erroneously calculated a slightly different figure, $996,582.00, for the amount remaining to be paid on the invoices. (Dkt. 73 at 4 & Ex. A.) Based on the figures provided by LoJack in its Rule 56.1 Statement, however, the Court calculated an outstanding balance of $996,192.00. (*See* Dkt. 60−2 ("LoJack 56.1") ¶¶ 90−181.)

Vehicle Recovery Units" ("SVRUs") from LoJack at a price of $200 per unit. (LoJack 56.1 ¶ 19; Dkt. 60−3 Attach. 4 ( "Agr.") at 2 & ¶ 6.1.) Under the written terms of the Agreement, payments would be considered late after "sixty days of invoice" and "late payments would bear interest at the rate of one and one−half percent per month until paid." (Agr. ¶ 6.1.)

The Agreement provided that it "constitute[d] the entire agreement between the parties and supersede[d] all prior agreements, whether written or oral, with respect to the services to be provided by the Distributor [*i.e.*, GLM] and all matters related thereto." (*Id.* ¶ 17.) The Agreement also specified that it "may be amended or modified only by written instrument signed by the Distributor [*i.e.*, GLM] and by a duly authorized Distributor of LoJack." (*Id.* ¶ 18.)[3] In addition, the Agreement included the following non−waiver clause:

> No waiver of any provision hereof shall be effective *unless made in writing and signed by the waiving party*. The failure of either party to require the performance or obligation of this Agreement, or the waiver of either party of any breach of this Agreement, *shall not prevent any subsequent enforcement* of such term or obligation or be deemed a waiver of any subsequent breach.

(*Id.* ¶ 15 (emphasis added).) Finally, the parties agreed that Massachusetts law governed the Agreement "in all respects . . . without regard to the conflicts of laws principles[.]" (*Id.* at 10.)

After entering the Agreement, LoJack delivered SVRUs to GLM, accompanied by a series of invoices. (LoJack 56.1 ¶¶ 90−181.) It is undisputed that GLM failed to pay numerous invoices. (LoJack 56.1 ¶ 84.) LoJack did not indicate on any of the invoices that GLM owed interest on the late payments. (*See* Dkt. 75−1 Ex. A.) Although LoJack repeatedly requested that GLM bring its delinquent account current, there is no indication that LoJack specifically asked GLM to pay interest pursuant to the Agreement's interest provision . (*See* LoJack 56.1 ¶ 81; Dkt. 75−1 Exs. A−C.)

---

[3] The Court understands "duly authorized Distributor of LoJack" to mean "duly authorized representative of LoJack." *G.L.M.*, 2014 WL 4675854, at *5.

However, the communications between the parties reflect that LoJack extended the payment deadline beyond the 60−day deadline provided for in the Agreement. (*See* Dkt. 75−1 Exs. A−C.) On November 17, 2004, LoJack's Credit Manager sent an email to GLM's President regarding GLM's outstanding balance. (Dkt. 75−1 Ex. B.) In that email, LoJack indicated to GLM that "[w]e really need to stick with the payment terms *Lojack has already extended to GLM which are net 90 days*." (*Id*. (emphasis added).)[4]

Further, in an internal memo dated September 24, 2010 memorializing a call between LoJack and GLM, LoJack noted that it had provided GLM with "90 day terms" for payment. (Dkt. 75−1 Ex. C.) LoJack also noted "Net 90" as the "Payment Terms" on its April 2010, June 2010, September 2010, December 2010, and March 2011 invoices to GLM. (*Id*.)

On October 6, 2010, LoJack sent GLM a notice indicating that GLM owed a balance of over $1,000,000, of which hundreds of thousands of dollars were more than 90 days past due. (*See* LoJack 56.1 ¶ 86.)

In a subsequent exchange of letters throughout October 2010, LoJack and GLM agreed to terminate the Agreement. (*Id*. ¶¶ 88−89.) At the time GLM filed its initial action with this Court on October 13, 2010, GLM owed LoJack more than $1,000,000 based on the written terms of the Agreement and the invoices. (*Id*. ¶ 84.)

## *DISCUSSION*

The Court must determine the amount of damages to be awarded to LoJack as a result of GLM's breach of contract. (*See* Dkts. 73, 75, 77.) LoJack asserts that it is entitled to recover the outstanding balance for the SVRUs reflected in the unpaid invoices, plus interest calculated

---

[4] The notation "net 90" indicates that full payment was due within 90 days of receiving the invoice.

according to the Agreement's terms, *i.e.*, a 1.5% monthly interest rate accruing after the payment deadline of 60 days after invoice. (Dkt. 73 at 3−5.) GLM does not appear to dispute that LoJack is entitled to recover the unpaid balance on the invoices, which total $996,192.00. (*See* Dkt. 75; LoJack 56.1 ¶¶ 90−181.)[5] Rather, GLM focuses its opposition on its contentions that (1) LoJack cannot recover interest because LoJack waived or modified the Agreement's interest provision, or (2) the amount of any interest owed should be reduced because the parties extended the Agreement's 60−day payment deadline to 90 days. (Dkt. 75 at 4−8.)

The Court finds that LoJack did not waive or modify its contractual entitlement to recover interest on late payments. However, because GLM has presented sufficient evidence that LoJack orally modified the payment deadline to 90 days, interest should be calculated as accruing 90 days after invoice. Accordingly, LoJack is entitled to recover $996,192.00 in unpaid balance, plus interest at the Agreement rate of 1.5% per month accruing 90 days after the date of invoice.

## I. Standard for Damages

This claim is governed by Massachusetts law. *G.L.M.*, 2014 WL 4675854, at *10. To determine damages for a breach of contract, Massachusetts law follows the long-established rule that the wronged party should be "placed in the same position as if [the] contract had been

---

[5] Although GLM nowhere contests the amount of the unpaid balance reflected on LoJack's invoices, GLM briefly asserts that the parties did not observe the price of $200 per SVRU set forth in the Agreement. (Dkt. 75 at 4−5.) GLM cites discussions between the parties about "what the pricing should be" and rehashes its previously-rejected argument that GLM is entitled to the "best price" at which LoJack offered its SVRUs to dealers. (*Id.* (discussing LoJack's sale of SVRUs "to dealers at prices lower than prices [offered to] GLM.").) However, the Court has already ruled on summary judgment that no reasonable factfinder could find that there was a modification of the $200 price in the integrated Agreement. *G.L.M.*, 2014 WL 4675854, at *12-18. LoJack thus is entitled to recover at least the $996,192.00 reflected in the unpaid invoices. (LoJack 56.1 ¶¶ 90−181.)

performed." *John Hetherington & Sons, Ltd. v. William Firth Co.*, 95 N.E. 961, 964 (Mass. 1911); *accord Doering Equip. Co. v. John Deere Co.*, 815 N.E.2d 234, 239 (Mass. App. Ct. 2004). Damages, however, are limited to those losses that are reasonably foreseeable by the parties and that are a natural consequence and proximate result of the breach. *Int'l Totalizing Sys., Inc. v. PepsiCo, Inc.*, 560 N.E.2d 749, 753 (Mass. App. Ct. 1990.) LoJack, as the party seeking damages, must establish the amount of loss with a fair degree of reasonable certainty. *John Hetherington*, 95 N.E. at 964; *accord Novel Iron Works, Inc. v. Wexler Constr. Co.*, 528 N.E.2d 142, 148 (Mass. App. Ct. 1988).

## II. No Waiver or Modification of Interest Provision

### A. Waiver

GLM contends that despite the Agreement's non-waiver clause, LoJack waived its right to enforce the Agreement's provision requiring GLM to pay interest at a rate of 1.5% per month on late payments by failing to indicate its intent to enforce the provision. The Court disagrees. A mere failure to indicate intent to enforce does not meet the high standard of "clear, decisive, and unequivocal" evidence required to establish waiver under Massachusetts law, particularly in the light of the Agreement's express non-waiver clause.

Under Massachusetts law, waiver is the "intentional relinquishment of a known right." *Dynamic Mach. Works, Inc. v. Machine & Elec. Consultants*, 831 N.E.2d 875, 879 (Mass. 2005) (quoting *Kent v. Warner*, 94 Mass. 561, 563 (1866)); *Sheehan v. Commercial Travelers Mut. Accident Ass'n of Am.*, 186 N.E. 627, 630 (Mass. 1933) ("There can be no waiver of a right unless the right is known and [the waiving party] intended to surrender it."). Thus, non-waiver clauses may be waived if "there is substantial authority against giving literal and full effect to such clauses." *M.J.G. Props. v. Hurley*, 537 N.E.2d 165, 166 (Mass. App. Ct. 1989). However,

6

waivers that are not explicit must be supported by "clear, decisive, and unequivocal conduct," especially when the agreement in question includes an explicit non-waiver clause. *Fresh Pond Mall Ltd. P'ship v. Payless Shoeshource, Inc*, 11 CV 283, 2012 WL 739111, at *2 (Mass. App. Ct. Mar. 8, 2012) (quoting *Glynn v. City of Gloucester*, 401 N.E.2d 886, 892 (Mass. App. Ct. 1980).

In *Fresh Pond,* the defendant failed to enforce a cancellation provision of its lease for a span of 14 years. *Id.* at *1. The defendant's written agreement with the plaintiff provided that the defendant could not waive its right to cancel the lease simply by delaying or failing to make use of that right. *Id*. at *2. The court in *Fresh Pond* thus found that the defendant's lack of action did not meet the requirement for "clear, decisive, and unequivocal conduct" and did not qualify as a waiver given the agreement's non-waiver clause. *Id*.

Here, GLM similarly asserts LoJack waived the Agreement's interest provision because LoJack failed to expressly enforce the provision. (Dkt. 75 at 6−7.) Indeed, LoJack did not indicate on its invoices that GLM owed interest, or even reference interest, nor did LoJack discuss interest in any correspondence to GLM regarding the outstanding balance. (Dkt. 75−1 Exs. A−C.) However, similar to the written non-waiver terms existing in *Fresh Pond*, the Agreement explicitly states that waiver cannot be implied from a failure of one party to require the other to perform its obligations. (Agr. ¶ 15.) Moreover, LoJack requested on numerous occasions that GLM brings its delinquent account current. (LoJack 56.1 ¶ 81.) Given LoJack's repeated requests for payment, the mere failure to indicate that interest was due in the invoices does not meet the requirement for "clear, decisive, and unequivocal" conduct evincing waiver of the written interest provision, nor does it support GLM's contention that there exists "substantial authority" against enforcement of the Agreement's non-waiver clause. (*See* Dkt. 75 at 6.) Thus,

there is insufficient evidence that LoJack waived its right to enforce the Agreement's interest provision for delinquent payments.

B. Modification

Alternatively, GLM asserts that the parties modified the Agreement's interest provision through LoJack's invoices and the course of conduct. (Dkt. 75 at 5−6, 7−8.)

GLM first asserts that, under the Agreement's provision allowing written modification, LoJack's invoices constitute a written modification to the Agreement's interest provision because the invoices failed to charge interest. (*Id.* at 5−6.) This is insufficient, however, because the Agreement specifically requires modifications to be made "by written instrument signed by [GLM] and by a duly authorized [representative] of LoJack." (Agr. ¶ 18.) Although the cited invoices might be considered "written instruments" that were "signed" by LoJack given that they were printed on LoJack letterhead, none of these documents were signed by GLM.[6] (*See* Dkt. 75−1 Ex. A.) Because none of the invoices offered by GLM meet the Agreement's signature requirements, the Court finds that the parties did not make a written modification to the Agreement's interest provision, so as to eliminate it entirely.

GLM also contends that the parties orally modified the Agreement's interest provision. (Dkt. 75 at 7−8.) Under Massachusetts law, a provision that an agreement may only be amended by written instrument – such as the one in the Agreement – does not automatically bar oral modification of the contract. *See Cambridgeport Sav. Bank v. Boersner*, 597 N.E.2d 1017, 1022

---

[6] Although GLM did not cite LoJack's email to GLM and LoJack's internal memo as written amendments (despite attaching these documents to its brief), the Court notes that these communications would also have failed the Agreement's requirements. (*See* Dkt. 75-1, Exs. B−C.) The LoJack email and memo might be considered "written instruments" that were "signed" by LoJack by virtue of the email signature and memo header, but again, neither of these communications was signed by GLM. (*Id.*)

8

(Mass. 1992). Evidence of oral modification is not limited to recorded conversations or written communications, but may instead "be inferred from the conduct of the parties and from the attendant circumstances" *First Pa. Mortg. Trust v. Dorchester Sav. Bank*, 481 N.E.2d 1132, 1139 (Mass. 1985) (quoting *Flynn v. Wallace*, 270 N.E.2d 919, 922 (Mass. 1971)). However, the law "imposes stringent proof requirements for such oral modification." *Wagner & Wagner Auto Sales, Inc. v. Land Rover N. Am., Inc.*, 547 F.3d 38, 46 (1st Cir. 2008). Evidence of a subsequent oral modification "must be of sufficient force to overcome the presumption that [an] integrated and complete agreement, which requires written consent to modification, expresses the intent of the parties." *Cambridgeport*, 597 N.E.2d at n.10; *see also Beal Bank S.S.B. v. Krock*, 97 CV 2241, 1998 WL 1085807, at *3 (1st Cir. Sept. 3, 1998) ("Massachusetts . . . impose[s] a heavy burden on the party seeking to modify an integrated written contract by subsequent oral agreement."); *Lydon v. Nationwide Mut. Ins. Co.*, 91 CV 11971, 1997 WL 260064, at *10 (D. Mass. May 9, 1997) ("[T]he evidence must be sufficiently clear and convincing to overcome the 'presumption' that waiver was not intended.").

In *First Pennsylvania Mortgage*, the parties entered a contract that banned oral modifications and required modifications to be written. 481 N.E.2d at 1132. However, the Court found that the multiple discussions between parties and written communiciations reflecting the "jointly reached" modification with details about the modification overcame the contract's written modification requirement. *Id.* at 1137−38.

By contrast, in *Cambridgeport*, the parties entered a contract that required the defendants to make interest payments on a loan. 597 N.E.2d at 1019. Since the plaintiffs made interest payments on behalf of defendants for the first four months of the agreement and did not charge the defendants interest, the defendants argued that the parties had modified the contract to place

9

the interest obligation on the plaintiffs. *Id*. at 1019, 1021−23. The court found no modification despite the defendants' showing of the plaintiffs' "established" procedure of payment and a loan document that affirmatively indicated the bank's payment of monthly interest. *Id*. at 1023. The court reasoned that the evidence did not breach the "strong barrier against a claim of subsequent modification" and noted that overcoming this barrier would require evidence more akin to the showing of modification in *First Pennsylvania Mortgage. Id*. at 1022.

Here, GLM has offered insufficient evidence to find a modification of the Agreement to eliminate the interest requirement on delinquent payments. As in *Cambridgeport*, GLM attempts to overcome the "written instrument" requirement by citing LoJack's failure to indicate in any manner that interest would be applied to GLM's late payments and, more specifically, LoJack's failure to reference interest, or include an interest amount, in its invoices reflecting GLM's past-due amounts. (Dkt. 75 at 1, 7−8.) However, unlike the numerous discussions and detailed written communications consistent with contract modification that existed in *First Pennsylvania Mortgage*, LoJack's failure to reference interest in its past-due invoices to GLM does not clearly and convincingly support the complete elimination of the Agreement's interest provision.

In sum, the Court finds that LoJack is entitled to recover interest on GLM's late payments at the Agreement's rate of 1.5% per month until paid. (Agr. ¶ 6.1.)[7]

---

[7] LoJack notes that Massachusetts law provides for a potentially lower rate of interest to be applied to GLM's late payments. (Dkt. 73 at 5−6.) Under Massachusetts law, interest may be added to the amount of damages "*at the contract rate, if established*, or at the rate of twelve per cent per annum from the date of breach or demand." Mass. Gen. Laws ch. 231, § 6C (2014) (emphasis added). Because the Agreement provides for a specific interest rate, the Court finds that the alternate interest rate of 12% per year under Massachusetts law is inapplicable.

### III. <u>Modification of the 90−Day Payment Term</u>

The Court, however, finds that LoJack's post-Agreement communications with GLM and the course of conduct between the parties is sufficient to establish an oral modification to the Agreement's payment term from 60 days of invoice to 90 days of invoice. (*See* Dkt. 75 at 7−8.)

LoJack argues that there can be no oral modification to the payment deadline due to this Court's prior summary judgment ruling that there was no modification to the price terms. (Dkts. 73 at 5, 77 at 2.) To the contrary, the Court noted in its summary judgment order that the evidence did not support a price modification as there had been no "memorialization of the [modification], action in conformity with the [modification], [or] written communications . . . recognizing the terms of the [modification]" on price. *G.L.M.*, 2014 WL 4675854, at *18. The evidence regarding modification of the payment deadline, by contrast, is considerably more substantial. GLM specifically cites the following: (1) LoJack wrote "We really need to stick with the payment terms LoJack has already extended to GLM which are *net 90 days*" in a November 2004 email to GLM representatives (Dkt. 75−1 Ex. B (emphasis added)); (2) LoJack wrote "Net 90" under the "Payment Terms" section of its April 2010, June 2010, September 2010, December 2010, and March 2011 invoices to GLM; (Dkt 75−1 Ex. A); and (3) LoJack referred to the fact that it provided GLM with "90 day terms" in its September 2010 internal memo (Dkt 75−1 Ex. C). Similar to the communications offered in *First Pennsylvania Mortgage*, these communications are numerous, memorialized in writing, and specific about the modification of the 60−day payment term to 90 days. Therefore, there is sufficient evidence to

overcome the presumption that the Agreement is integrated, complete, and expresses the intent of both parties as to the length of the Agreement's payment term.[8]

The Court accordingly finds that the applicable payment term is 90 days and that interest owed to LoJack should be calculated for the period of non-payment after 90 days of invoice. Since LoJack has not submitted its calculations for damages with a 90−day payment term, LoJack is directed to file a proposed damages calculation by July 29, 2015. LoJack's filing should detail the underlying figures as well as the method for its calcuations. In addition, LoJack shall provide the Court with its damages spreadsheets in Excel format. GLM may respond to LoJack's damages calculation by August 5, 2015.

*CONCLUSION*

For the foregoing reasons, the Court finds that LoJack is entitled to recover $996,192.00 for GLM's breach of contract, plus interest at the Agreement rate of 1.5% per month accruing 90 days after the date of invoice. LoJack shall submit its proposed damages calculations as set forth above no later than July 29, 2015. GLM may submit any response to LoJack's damages calculation by August 5, 2015.

SO ORDERED:

/s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: July 15, 2015
      Brooklyn, New York

---

[8] Under Massachusetts law, consideration is not required for modification of distributorship agreements. Mass. Gen. Laws ch. 106, § 2-209 (2014); *Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc.*, 864 N.E.2d 518, n.34 (Mass. App. Ct. 2007); *see Boyle v. Douglas Dynamics*, 292 F.Supp.2d 198, 211 (D. Mass. 2003).